```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

JERRY HALL                                              CIVIL ACTION

VERSUS                                                  NO. 05-2528

BURL CAIN, WARDEN                                       SECTION "I"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. §2254(e)(2).  Accordingly, it is hereby recommended that the instant petition be **DENIED WITH PREJUDICE.**

**I.  PROCEDURAL HISTORY**[1]

The petitioner, Jerry Hall, was charged by bill of information on April 9, 2001, with one count of armed robbery in violation of La. R.S. 14:64.  Petitioner pleaded not guilty at his April 12, 2001 arraignment.  On June 5, 2002, a 12-person jury found petitioner guilty as charged.  On June 10, 2002, petitioner was sentenced to 30 years at hard labor without the benefit of parole, probation or suspension of sentence.  On that same date, the State filed a multiple bill, and petitioner filed an oral motion for appeal, which the trial court granted.  On July 25, 2002, after a multiple bill hearing, petitioner was found to be a second felony offender.  The trial court vacated its previous sentence of 30 years and re-sentenced petitioner to 49 years and 6 months without benefit of parole, probation or suspension of sentence.

On June 25, 2003, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.  State v. Hall, 851 So.2d 330 (La. App. 4 Cir. 2003).  On February 6, 2004, the Louisiana Supreme Court denied petitioner's writ application.  State v. Hall, 865 So.2d 738 (La. 2004).

Following the completion of his direct appeal proceedings, petitioner sought post-conviction relief.  His efforts in this

---

[1]A portion of the procedural history is taken from the Louisiana Fourth Circuit Court of Appeal's decision, State v. Hall, 851 So.2d 330, 331 (La. App. 4 Cir. 2003).

2

regard culminated on May 20, 2005, when the Louisiana Supreme Court denied his writ application.  State ex rel. Hall v. State, 902 So.2d 1046 (La. 2005).

In the instant federal habeas corpus action, petitioner raises the following claims: 1) He was denied effective assistance of counsel due to counsel's failure to investigate or interview witnesses to the crime and alibi witnesses; 2) Evidence was insufficient to support his conviction; and, 3) The trial court erred in requiring a defense witness to testify in prison attire. In its Response (rec. doc. 9), the State concedes that the instant action is timely and that petitioner, as required under Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982), has exhausted his state court remedies.  Before proceeding to the merits, the court shall review the applicable facts.[2]

Noel Reimonenq, an independent Sunbeam bread distributor, testified that on December 26, 2000, after he made a delivery to K & M grocery store, two individuals robbed him of $66.00.  Mr. Reimonenq further testified that the two individuals grabbed him from behind as he left the store.  One of the individuals wore a yellow jacket and blue jeans, and the other wore a black hooded jacket.  The individual in the yellow jacket took out a gun and

---

[2] The facts are taken from the Louisiana Fourth Circuit Court of Appeal's opinion, State v. Hall, 851 So.2d 330 (La. App. 4 Cir. 2003).

3

demanded the money.  Mr. Reimonenq complied and gave them the money he had.  The two men then demanded that Mr. Reimonenq get in his truck with them, but he refused.  The individual in the yellow jacket pointed the gun at Mr. Reimonenq who pushed it away.  The individual in the yellow jacket then fired a shot at Mr. Reimonenq before the two ran away.  Mr. Reimonenq identified the defendant in open court as the man who wore the yellow jacket and held the gun.

Detective David Hunter, of the New Orleans Police Department, testified that he conducted a follow-up investigation into the robbery of Mr. Reimonenq at the K & M grocery store.  On the day of the robbery, Detective Hunter interviewed Mr. Reimonenq and Mike Esmail, the owner of the grocery store.  Mr. Esmail later testified at trial that as Mr. Reimonenq arrived to make his delivery, he left his store to run an errand.  As Mr. Esmail left the store he saw twins Jerry and Terry Hall standing on the side of his store wearing yellow and black jackets.  Mr. Esmail gave Detective Hunter the names of the twins.  As a result, Detective Hunter created a photographic line-up.  Detective Hunter had Mr. Reimonenq view the photographs, and he identified Jerry Hall as the person who wore the yellow jacket and held the gun.

Terry Hall, defendant Jerry Hall's brother, testified that he and Jerry were in New Orleans East at the time of the robbery.  He further testified neither he nor his brother own yellow or black jackets.

Mary Hall, Jerry Hall's mother, testified that she spoke to Jerry on her cell phone on the day of the robbery. According to Mary Hall, her son, Jerry, informed her that he was at his father's home in New Orleans East.

## II. ANALYSIS

### A.   Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective by virtue of his failure to interview and have testify at trial witnesses Roland Alexis and Charles Ross. According to petitioner, Alexis would have testified that on December 26, 2000, the date of the robbery, he observed the twins, Jerry and Terry Hall, "standing at the bus stop on Poland Ave." Alexis briefly spoke to the twins, then observed them "getting on the bus" which would bring them to New Orleans East. Thereafter, Alexis proceeded to K & M grocery store, where he observed "Brian [an alleged suspect in the robbery] standing on the side of the store." Upon exiting the store, Alexis again saw Brian "on the side of the store." Alexis later returned to K & M grocery store, at which point, "Mr. Esmail accused [him] of robbing his delivery man" and held him in the store until the robbery victim returned and informed that Alexis was not his assailant. In response, Mr. Esmail, according to Alexis, stated: "[I]t must be the twins", even though Alexis informed that "the

last person [he had] seen was Brian".[3]

Petitioner contends that Charles Ross, his uncle, was present at his mother's home, where petitioner lived, when the investigating officers arrived, and Ross would have testified that the officers were looking for "Brian", not for Jerry or Terry Hall.[4]  In support of this contention, petitioner states: "According to Det. Hunter's testimony, after speaking with Mr. Mike Esmail, Mr Reimoneing [sic] [the victim], and the officers who received the description of the assailant", "the names Jerry and Terry Hall never came up, instead the name Brian came-up and the investigating officer went to the Hall's residents [sic] asking for Brian."[5]

The seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is <u>Strickland v. Washington</u>, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that his counsel's performance was deficient, but also that he was prejudiced as a result of counsel's deficient performance.  If a court finds that a petitioner has made an insufficient showing as

---

[3] <u>See</u> Federal rec., doc. 1, petitioner's supporting memorandum at pp. 5-6.

[4] <u>See</u> Federal rec., doc. 1, petitioner's supporting memorandum at p. 7.

[5] <u>See</u> Federal rec., doc. 1, petitioner's supporting memorandum at p. 6.

to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.  Id.

Under the deficient performance prong of the Strickland test, "... it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993), quoting Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.  "'An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995), cert. denied, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996), quoting United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995), cert. denied, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 893 (1997).  To prove prejudice under the Strickland standard, a petitioner "... must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002), citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001).  To show the prejudice required to support an ineffective assistance of counsel claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the

7

witness would have testified at trial.'"  Evans, 285 F.3d at 377, quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).

Petitioner has failed to satisfy the above-described burden of proof. Petitioner offers no evidence to support his claim that but for counsel's ineffectiveness, a witness named Roland Alexis would have appeared for trial and provided testimony that not only would have supported his alibi that he was in New Orleans East at the time of the robbery, but also would have supported his claim that a suspect by the name of "Brian" was at the K & M grocery store around the time of the robbery. As for his claim that his uncle, Charles Ross, would have testified that investigating officers were initially looking for "Brian" in connection with the robbery at issue, petitioner points to alleged testimony from Detective Hunter to the effect that officers were originally looking for "Brian" not Jerry or Terry Hall. However, a review of the trial transcript reveals that petitioner's recollection of Hunter's testimony is incorrect. When defense counsel specifically asked Detective Hunter whether or not he was aware "that investigating officers went looking for Brian", Detective Hunter responded: "I am aware that they went to a house on Mazant, which is reportedly where the Halls resided or stayed. **I don't recall them going looking for a person named Brian**."[6]  Accordingly, the court finds that the instant claim is without merit.

**B. Insufficiency of Evidence**

---

[6] See State rec., vol. 1 of 3, trial transcript at p. 12, lines 13-17 (emphasis added).

When conducting a sufficiency of the evidence review, courts generally adhere to the standard set forth by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the Court held that a claim of insufficient evidence would lie if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt.

In the instant matter, petitioner claims that a rational trier of fact could not have found him guilty due to the unreliability of the witnesses' testimony as to whether he or his twin brother had committed the armed robbery at issue. In support of his position, petitioner first points to the testimony of Mike Esmail, the owner of K & M grocery store. Petitioner notes that Esmail did nothing more than inform police that he saw "the twins", specifically, Terry and Jerry Hall, "hanging on the side of the store" shortly before the robbery, when he left to run an errand. Petitioner argues that in between the time Esmail left the store and when he returned, "there could have been someone else, who could have committed this crime".[7]

Petitioner's summary of Esmail's testimony is essentially correct and if the jury's guilty verdict had been based solely upon Esmail's testimony, petitioner's insufficiency of evidence claim

---

[7] See Federal rec., doc. 1, petitioner's supporting memorandum at pp. 9-10; see also State rec., vol. 1 of 3, trial transcript at p. 24, lines 16-19.

9

may have merit.  However, said verdict was not based solely upon Esmail's testimony.  In addition to Mr. Esmail, the State also offered the testimony of Mr. Reimonenq, the robbery victim.

According to petitioner, the victim, Mr. Reimonenq, "identified two different men", petitioner, whose photograph was contained in the photographic lineup marked as State's Exhibit 1, and petitioner's twin brother, Terry Hall, whose photograph was contained in the photographic lineup marked as State's Exhibit 2, "as being one man", the man who held him up at gunpoint.  In support of his argument, petitioner points to the trial colloquy, located on p. 28, lines 12-29, which provides:

> Q  At this time, Mr. Reimonenq, I'm going to show you what's been previously marked as State's Exhibit 1 and State's Exhibit 2.  I'm going to ask you to look at State's Exhibit 1.  Do you recognize State's Exhibit 1?
> A.  That's the guy here.
> Q.  That's the guy there what?  You need to explain that to the jury.
> A.  This is the guy that pulled the gun, took the money, then shot at me.
> Q.  And did you do anything on the back of that?
> A.  I must have signed it the day I identified him.  Yeah, I did sign it.
> Q.  And I want to show you what I've marked as State's Exhibit 2.  Were you presented with that photo lineup by Detective Hunter as well?
> A.  Yeah, I was.
> Q.  What happened when he presented you with that lineup?
> A.  Well, this picture looked a little different because in this photo this guy had braids.  So I don't know if I would be able to, you know, at that time identify him from this one.  But this is basically how his hair was at the time of the robbery, like this.  And the braided - - I don't know if I could identify him from that.  But now that I can see if I look at it good - - you know, they only show it to you for a second - -  I could see it's

the same guy.  But in this photo, he had braids.[8]

As shown below, petitioner's reliance on the above colloquy is misplaced.

First, by virtue of the above testimony, Mr. Reimonenq informs that he could not identify his assailant based solely on the pertinent picture comprising a portion of State's Exhibit 2.  He states:  "I don't know if I would be able to, you know, at that time identify him from this one", i.e., the picture in State's Exhibit 2, Terry Hall's picture.  This fact is confirmed by the following cross-examination testimony of Mr. Reimonenq:

> Q.  You were unable to make any identification from what they claim is Exhibit 2, or the second photo lineup [containing Terry Hall's picture]; is that correct?
> A.  Correct.[9]

Second, the fact that the victim, at trial, may have looked at a picture of petitioner's twin brother, Terry Hall, and believed it was a picture of petitioner, does not unduly diminish the veracity of his identification of petitioner as his assailant.  Mr. Reimonenq explained that during the armed robbery, his assailant "was right on him", "right there in my face."[10]  Even after viewing Terry Hall in the courtroom at trial, Mr. Reimonenq's

---

[8] See Federal rec., doc. 1, petitioner's supporting memorandum at pp. 10-11.

[9] See State rec., vol. 1 of 3, trial transcript at p. 41, lines 21-23.

[10] See State rec., vol. 1 of 3, trial transcript at p. 29, line 24 and p. 30, line 9.

identification of petitioner as his assailant was unwavering.  He specifically pointed to petitioner and stated, without hesitation: "The gunman's right there."[11]

Based upon the above, the court finds that the identification evidence submitted by the State was clearly sufficient to support the jury's finding that petitioner was guilty of the armed robbery at issue.  Accordingly, the instant claim for habeas corpus relief is without merit.

### C. Trial Court Erred in Allowing Witness to Testify in Prison Attire

Petitioner argues that his constitutional rights were violated when the trial court denied defense counsel's request that defense witness, Terry Hall, incarcerated in Orleans Parish Prison ("OPP") at the time of petitioner's trial, be allowed to testify in street clothing rather than his prison uniform.  In denying defense counsel's request, the trial court informed:

> It's my practice, for the defense and the DAs, any witness that comes up from OPP has to have on those clothes.  It's not so with the defendant, but I will not allow him [a witness] to wear civilian clothes.[12]

The Louisiana Fourth Circuit Court of Appeal, in rejecting the instant claim in connection with petitioner's direct appeal, reasoned:

---

[11] See State rec., vol. 1 of 3, trial transcript at p. 46, line 7.

[12] See State rec., vol. 1 of 3, trial transcript at p. 1, lines 13-16.

12

> In State v. Marcelin, 94-2432, p. 3 (La. App. 4 Cir. 1/31/96), 669 So.2d 497, 498, this court rejected a similar argument, stating, "[o]nly sheer speculation supports the theory that this defendant was deprived of a fair trial because his witness, whom the jury would legitimately learn was a convicted felon, would lose his credibility because of his appearance in shackles." See also State v. Washington, 95-771 (La.App. 5 Cir. 2/14/96), 670 So.2d 1255.
>
> In the instant case, the defendant has cited no cases nor has he shown how he was directly prejudiced by the witness's attire.

Hall, 851 So.2d at 333.

As with his direct appeal, petitioner, in connection with his federal habeas corpus application, cites no cases supporting his position. In the only case he does cite, State v. Joseph, 613 So.2d 1131 (La. App. 5th Cir. 1993),[13] the state appellate court held, much like the state appellate court held in petitioner's case, that the defendant was not prejudiced by virtue of the fact that his witness "testified as a prisoner." Id. at 1134. The court added: "We are unaware of any reversal because a witness testified in a prison uniform, particularly if the defense was not limited in questioning the witness as to the reasons for the incarceration." Id.

A review of the pertinent trial transcript reveals that the defense was not limited in questioning the witness, Terry Hall, as to the reasons for his incarceration.

---

[13] See Federal rec., doc. 1, petitioner's supporting memorandum at p. 14.

13

> Q. And I'd like to get a couple of things laid out on the table right away. I recognize that the jury sees that you're handcuffed and in orange clothes?
>
> A. Yes, Ma'am. I'm on a warrant for fines and fees.
>
> Q. Fines and fees, is that all?
>
> A. Yes, ma'am.
>
> Q. Which means you didn't pay some fines due to being on probation?
>
> BY MR. BURNS [the prosecutor]:
>
> Objection, Leading.
>
> BY THE COURT:
>
> Don't lead your witness.
>
> DIRECT EXAMINATION RESUMED BY MISS TAYLOR [defense counsel]:
>
> Q. Why did you owe fines and fees?
>
> BY MR. BURNS:
>
> Relevance, Your Honor.
>
> BY THE COURT:
>
> No, she wants to know why.
>
> You can tell her if that's the question she wants answered.
>
> DIRECT EXAMINATION RESUMED BY MISS TAYLOR:
>
> A. I haven't paid my fines and fees.
>
> Q. Have you ever been convicted of a felony?
>
> A. Yes, ma'am, I was 17 years old. In 1995, I was arrested for possession - - I was convicted of possession of stolen property.[14]

Further, while petitioner argues that Terry Hall's "character and credibility was [sic] greatly deminished [sic]" because he was

---

[14] It was later established on cross-examination that petitioner was convicted twice for possession of stolen property. See State rec., vol. 1 of 3, trial transcript at p.47, lines 17-32; p. 48, lines 1-7; and, p. 54, lines 10-32.

forced to take the stand while wearing prison clothes,[15] the fact that Terry Hall had prior felony convictions is not a matter which could have been hidden from jurors.  Once Terry Hall took the witness stand in order to provide an alibi for petitioner, he subjected himself to questioning about his prior felony convictions.  See generally Hampton v. Hauck, 383 F.2d 389, 390 (5th Cir. 1967), citing Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, reh. den., 318 U.S. 801, 63 S.Ct. 826, 87 L.Ed. 1164 (1943); Claunch v. United States, 155 F.2d 261 (5th Cir. 1946).  Any additional harm to his credibility stemming from his prison attire was incidental, not rising to the level of a constitutional violation.  See Johnson v. Spalding, 510 F.Supp. 164, 171 (E.D. Wash. 1981), aff'd, 669 F.2d 589 (9th Cir.), cert. denied, 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982)(with or without their prison clothes, jurors were aware that witnesses were inmates; prison clothing did not prejudice defense); Cook v. Beto, 425 F.2d 1066 (5th Cir.), cert. denied, 400 U.S. 944, 91 S.Ct. 248, 27 L.Ed.2d 249 (1970) (fact that co-defendant was dressed in prison clothing when brought into the courtroom for identification did not prejudice defendant and did not constitute grounds for habeas corpus relief).  Accordingly;

## RECOMMENDATION

---

[15] See Federal rec., doc. 1, petitioner's supporting memorandum at p. 14.

It is hereby RECOMMENDED that the petition of Jerry Hall for habeas corpus relief be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this 2nd day of August, 2007.

*signature: Alma L. Chasez*

ALMA L. CHASEZ
United States Magistrate Judge